May it please the court, your honors, thank you very much for allowing me the opportunity to come today. I represent R.D., a minor, who we have asserted was injured by the MMR vaccine. I'm not going to go through too much of the facts, as I know you've probably read the briefs, but basically he received the MMR vaccine. Within 10 days or so, he developed severe bacterial pneumonia. There are not a whole lot of disagreements in this case, there are a lot of major issues of agreement. The immediate cause of the pneumonia was a bacterial infection. Both sides agree, and I think this is critical, that MMR has immunosuppressive effects, including T-cell suppression. That's the key issue in this case. The respondent conceded that if we suppress or remove a mice's T-cells, that mouse develops pneumococcal infection. The third prong, often three, the timing aspect of this case, is not in dispute. Now I gave a primer on the immune system in my briefs. I'll briefly go through it. The immune system has the ability to recognize pathogens, and then the adaptive system, consisting of T-cells and B-cells. Where we disagree, and where we feel the legal issue in question is, we feel that T-cells play a substantial role in the modulation of pneumococcal colonization and infection. How is that a legal issue? That's a factual issue, is it not? Well, let me rephrase. In other words, we believe that the evidence shows that T-cells do play that role. Right. What the evidence shows is a factual issue. Yes, Your Honor. In that way. You have a position on the facts. The government's expert had a different position. The special master in the trial court accepted the government's expert's opinion on the facts. Isn't that a credibility determination that is virtually unreviewable here? I respectfully disagree, Your Honor, because the question in our minds is, the weight of the epidemiological and studies that we set forth shouldn't be shielded by a credibility determination on the experts. I believe that's what the respondent is trying to do here. They're trying to phrase the question- Isn't that what happens in these vaccine cases? You have a bunch of different scientific evidence, a lack of scientific evidence. Your side comes in with an expert explaining what the facts show. Their side comes in with an expert showing what the facts show. The special master looks at all that evidence and makes a factual determination based on that. Generally, that's the role of the special master. It's not our job to re-judge that factual determination unless it's completely lacking in support. That's our position. It's an implausible- The problem ... You're saying that the government's expert's opinion is so implausible that it lacks all evidentiary weight. In light of the evidence that we presented, Your Honor? Respectfully, yes. No. It can't be in light of the evidence you presented because that's asking us to weigh the evidence. It has to be that the government's expert is not entitled to any weight whatsoever. But isn't the government's expert a pediatric immunologist that practices in this field and is qualified to opine on these issues? Isn't the problem for you that he just disagrees with your theory of the case? He disagreed with our theory of the case. He presented no true evidence in support of his position. In other words, our point is the special master completely abrogated the standards of causation. If I come to you and I say, you agree that mammals, mice, are in support of our theory, often one, a biologically plausible explanation, meaning that T-cells play a critical role. Then you start heightening the standard and you say, well, prove it to me in humans. Now you've just created another level of certainty. I present you human studies that echo the studies of the mice. Not only on top of that, I give you evidence from the National Institute of Health supporting my theory. I give you a company that is actually trying to develop... I get it, but these are all arguments that are directed to the special master about the evidence you're presenting him. He rejected it and instead relied on the government's expert who explained, I think with fairly sufficient detail, why he disagreed that this would have caused the specific infection. Let me put it in another way. If we accept the government's evidence as true, then aren't we just in a weighing situation where you have what you cite as an abundance of evidence on your side, they have evidence on the other side. How are we as an appellate court designed to agree with you on a factual conclusion unless the government's expert is entitled to no weight whatsoever? Well, my response to that is if we look at the case law that's come out on this issue, Andrew said credibility determinations are not to evaluate whether an expert witnesses medical theory supported by the weight of the epidemiological evidence, meaning set aside the credibility determinations and look at the epidemiological evidence. Our point is he shielded from appellate review by looking at credibility determinations of the experts without looking at underlying weight of the epidemiological evidence. Case after case that has been cited in this court says that's the wrong way to approach it, but that's exactly what he did. I don't understand what you're saying. He didn't disregard your evidence. He weighed it against the government's evidence and determined that government's evidence was more correct. Can you point to me in his decision where he excluded your evidence rather than just found it insufficient? I can't point out where he actually excluded the evidence. What I can say is that the conclusions that he came to based on the weight of the evidence was so implausible. It violated the standards of often one. Can you explain specifically what was implausible? For example, let's take the human studies. As I understand it, the special master found those at best to be mixed or inconclusive because that phase two trial didn't really show a connection between T cells and pneumonia. Then going to the mice studies, there's some reference on scientific evidence that tells us we can't automatically take experimental results from mice and extrapolate that to humans. There is some science that mice respond to pneumonia bacteria differently than humans do. At best, the mice studies, the human studies are muddled. I don't understand given that the government expert appears to be better qualified here than your expert who is not an immunologist. Why aren't we just stuck as a reviewing court to give deference to what seems like a muddled record, not something that I think we could regard as some kind of overwhelming record in your favor that would make any contrary view implausible? What is the evidence that the special master relied on to conclude this record isn't conclusive? Where did the special master go wrong? I thought he went wrong in number one, taking a company that was trying to develop a T cell-based vaccine and demanding that they actually reach statistical significance. That to me signals a level of scientific certainty that doesn't belong in the vaccine program. And I go back to what Palak said. Palak said that when you have a bunch of researchers that are actively investigating an idea and they're trying to develop it, the Vaccine Act requires no more. In that particular case, he wanted a vaccine that was serotype independent, that would have eradicated pneumococcus throughout the world. I respectfully disagree with the assessment that it's muddled. There is no proof that you can't extrapolate the findings of mouse studies to revolve around fungal infections. And then how do you juxtapose that with the fact that you have human studies that actually echo the very findings of the mouse studies? In other words, we're creating a situation where no petitioner can succeed under these standards. We have mice studies that prove our case, that they conceded prove our case. We have human studies, epidemiological studies, and yet we're denied because he believes one expert over the other. In other words, we're critiquing the messenger, not the message. And that's a problem. In other words, if a special master, all he has to do is say, well, I believe this expert, he comes off better than your expert. But the government's expert doesn't have any contrary epidemiological evidence, doesn't have any contrary human studies, just simply voices his dissatisfaction and his contrary opinion, whereas we have an expert that perhaps isn't as well-versed. I understand that point. But he has the epidemiological evidence. Then, in a way, appeals here are futile because it simply comes down to who has the better, well-received expert. It's difficult because pneumonia is not on the table as a table injury for these vaccines. But let me ask you a question that I'm also going to ask the government, because one of the things that struck me was that the special master seemed to take the blanket position that you can't extrapolate from mouse studies to humans. And that's what the special master said. And I think that's notoriously incorrect. I didn't see a challenge on a deliberate basis in terms of the threshold of admissibility. And my studies, which were discarded by the special master, seemed to be quite significant when, in fact, this sequence of events with a number of days intervening did not satisfy the vaccine table of injury. Where does that take us? I'm sorry, I'll make sure I understand your question. In treatment of the mouse studies. I don't recall if we made a formal Dauber challenge on that. He treated the mouse studies. He disregarded the mouse studies. Say they can't be extrapolated to humans. Correct. Not that the studies themselves were flawed, but as to how powerful an impact they contributed, did they not? To the conclusion that there was not causation. Your Honor, for the mouse studies, the respondent conceded and their expert conceded that if we suppress a mice's T cells, they're prone to pneumococcal infection. So from that statement alone, my understanding is he accepted the findings of the mice. He just refused to extrapolate them to humans. Yes. He said they didn't apply to humans. That's correct, Your Honor. And our point is... Isn't that what the government's expert also said? That these specific studies weren't automatically extrapolated? Not automatically. Wasn't it a stronger statement than that? I was given that impression. He said mouse immunology is not human immunology. Did you make a Dauber challenge to their expert? Did you get his report in advance? I got his report within days of the hearing. Yes, Your Honor. I did not make a formal Dauber challenge to the mouse immunology is not human immunology. I attacked it with our human studies. I didn't make a formal... Go ahead. Well, I'm just curious. It seems to me that for you to prevail, you have to demonstrate that the government's expert's opinion lacks all weight. If that's the case, then you should have made a Dauber motion to exclude his testimony as not either relevant or sufficiently explained or not based upon sufficient evidence or the like. But you complain about the special master accepting the government's expert, but if he wasn't challenged, if he was accepted as an expert, then what he says is evidence supporting the decision. Is it not? I didn't make a formal Dauber challenge. I challenged the conclusions of him based on his medical literature and lack of actual specific reference to pneumococcus. I look... In my briefs, I explicitly and in arguments, all his literature that he was trying to use was based on fungal infections, not one mention of pneumococcus in there. And it doesn't square with the human studies on pneumococcus. Can you tell me where in the special master's opinion, the special master said, mouse studies are completely and totally irrelevant when it comes to understanding human biology? I mean, at 8.22.23, I see the special master saying, well, according to the reference on manual of scientific evidence, it's important for someone relying on my studies to explain what the similarity is in biology between humans and mice. And in this particular instance, Dr. Lashkin did not make that kind of comparison. Whereas Dr. Romberg in comparison explained how mice differ from people and how that mice respond to pneumonia bacteria differently from how humans respond to pneumonia bacteria. There's some kind of IL-7F gene and that one mammal has it, the other doesn't. Do you understand what I'm talking about here? I don't quite see anywhere here where the special master is saying, my studies are just off the table. Instead, the special master appears to be considering what each expert said and did not say on this question. And I think our response to that was, that is an impermissible heightening of the burden of the standard of causation. Every researcher, just from a common sense standpoint, uses mice in their experiments. And even the government conceded that we wouldn't be doing these experiments on mice if we couldn't extrapolate the conclusions to humans. He said, without some reliable showing that an extrapolation from mice to people is appropriate, the studies based upon mice are not useful. And based on that statement certainly leaves the impression that reliance was not placed on the mouse studies, which I think supports what you're trying to tell us. There are other difficulties of 10 days is perhaps a long time, if in fact it was a consequence of the vaccination. Our argument has been from the beginning that raising the standards and taking mammalian studies, mice studies, and saying now we have to prove that it actually relates to humans is an expansion of what Congress intended under the Vaccine Act. Now it's completely unrealistic. Just a last question. This is the second MMR injection that R.D. received, right? There was an earlier vaccination? Yes, Your Honor. Back when he was two years old. Did he suffer from any kind of rash or negative reaction after the first vaccination? Not within a medically acceptable time frame. He had a rash, but when we investigated it, it was too far away from the initial MMR vaccination. Now this was when he was two. Five years later, he gets the second MMR. Okay, let's hear from the government. We'll save you a little time. Good morning. May it please the court. I'd like to start with just a correction to something that was just discussed. The first MMR vaccine was actually given when R.D. was one year old, and the rash that he allegedly suffered, or at the beginning of the case that petitioner said suffered, occurred about one year after that. There was absolutely no relationship between the rash that R.D. purportedly suffered after the MMR vaccine and the initial vaccine. Your Honor, the critical question presented in this case was one of immunology, specifically how the human immune system responds when confronted with pneumococcal bacteria. After carefully considering the entire record, the special master determined that reaching this conclusion, the special master relied on well-settled immunological principles, medical literature, and the testimony of Dr. Neil Romberg, a well-credentialed, board-certified pediatric immunologist. I appreciated your comment and your question, Judge Hughes, because the legal question here is whether or not the special master erred. It is not whether or not the T-cells play a role in the special master's decision. It makes very clear that he considered all of the evidence and properly determined that there is no such connection. It does appear that there may very well have been a significant error in the path drawing the conclusion from the events, and there certainly is a very unusual sequence of events of this serious consequence just a few days after the vaccination. So we know that there are presumptions, and even though pneumonia is, after that period of time, isn't on the table, which would automatically presume causation, where does one draw the line? Well, Your Honor, as you indicate, the pneumonia is not a table injury, and the simple fact that the child developed pneumonia a few days after getting the MMR vaccine does not legally or scientifically show that there is a causal connection between the two. There are millions... No one says it's impossible. Is that right? We're looking at likelihood? Well, this is an off-table case. It is petitioner's burden to establish by preponderant evidence that the vaccine can and did contribute to the child's pneumonia. There are a million cases of pneumonia that occur every year. There has not been even a single case study that shows that even suggests that there could be a causal connection. So sometimes things happen within temporal proximity to a vaccine or taking of a drug, but that does not demonstrate in any way that there is a causal connection. And as I indicated, this is an off-table case. It is petitioner's burden, not respondent's burden, to establish a causal relationship. I think it's very important in this case that petitioners did not present the testimony of an immunologist. Petitioners here are trying to overturn about 100 years of well-established immunology, and they didn't present an immunologist to do so. And I think that's telling, because we have a very well-credentialed immunologist, Dr. Neil Romberg, who comes from the Children's Hospital of Philadelphia, a premier institution. And he said, the theory, it would be great if it worked, but it doesn't work. It does not work in humans, and that is what we are talking about. I know you have some concern, Judge Newman, about the mice and the extrapolation of the mice studies. I think Dr. Romberg, if you look at the transcript, did a pretty good job explaining why you can't extrapolate regarding this particular bacteria and this particular type of T-cell. If the human immune system and the mouse's immune system were identical, there would never be a need to do experiments on humans. And we all know that, unfortunately, we have to do experiments on humans. Dr. Romberg pointed out that cancer was cured 20 years ago in mice. It has not, unfortunately, been cured in humans. And why is that? It's because the immunology is different. Mice serve their purpose. A lot of the animals that are studied serve their purposes because there are similarities, but there are significant differences, and this happens to be one of them, that you cannot take the particular type of T-cell that is suppressed. It is not all T-cells. It is just Th1, one particular type that is suppressed in temporal proximity to MMR, and extrapolate that to all types of T-cells in all types of animals, humans, and mice being equated in some fashion. Petitioners also indicate that the special master improperly raised their burden of proof, as we just discussed. This is an off-table case. It is their burden to establish, not ours. The theory proposed by Dr. Lokshin was not just speculative. It is unsupported by what is known about human immunology, and it is unsupported by medical literature. And, in fact, this theory has been tested. This is a rarity in our program. We actually have a test that was done bringing that theory into play, and that was the vaccine. The vaccine failed. They stopped the study because it didn't work. I think when you look at Daubert and the scientific reliability that they have, it is a very good example. I would just like to briefly discuss Altenprong-2 to the extent you have concerns about Altenprong-1 and there being error there. As you know, Altenprong-2 requires that petitioners show a logical sequence of cause and effect between the vaccine and the injury, and they must show that the vaccine was not only the but-for cause of the injury, but a substantial factor in bringing it about. Dr. Lokshin, on two occasions when asked whether or not the vaccine was a substantial factor in the development of RD's pneumonia, said he didn't know. And I can give you those sites. That's Appendix 718 and the Appendix 686. There is no treating physician support for petitioner's claim. There is no challenge-rechallenge. The simple fact is that we're very happy to hear that he has pretty much recovered, but the vaccine did not have anything to do with it other than the fact that it was given in temporal proximity to his development of this condition. The special master's decision clearly demonstrates that he thoroughly evaluated the entire record and considered all of the relevant evidence and his conclusion that petitioners did not meet their burden of demonstrating the preponderant evidence the prima facie case is rational, reasonable, and amply supported by the record. The special master's determination must be afforded substantial deference, and we respectfully request that this Court affirm the well-recent decisions of the special master in the Court of Federal Claims. Thank you. Thank you, Mr. O'Rourke. Mr. DeSalos. Thanks, Your Honor. I just want to touch on a couple of comments. We actually do have a case study, epidemiological evidence of increased human invasive pneumococcal disease in children post-MMR, and I did refer that to my brief, where they found that the relative incidence of pneumonia post-MMR in the first 30 days was threefold the increase. And again, I don't believe the special master took that into account. In the two months post-MMR, we had a sixfold increase in invasive pneumococcal disease post-MMR. So I disagree. This idea that, and I brought it up in my evidence, and this is what I'm talking about, raising the level of proof to a level of certainty. We have a vaccine company putting in millions of dollars into a T cell-based vaccine. Now we have respondents arguing, well, you didn't achieve it. If you achieve a T cell-based vaccine that is serotype-independent, you would win the Nobel Prize, because now you don't have to have pneumococcal vaccines that depend on any combination of the 90 or so serotypes that are out there. The whole point of bringing up this research was to show that we are actively working on a T cell-based vaccine and to show support for our theory. Just because we haven't come up with the proper cocktail to actually be able to manipulate T cells doesn't mean that we haven't proven all in one. All in one is a biologically plausible theory of causation that is reasonably persuasive and probable. The fact that we actually have companies working on a human T cell-based vaccine tells us all we need to know. Do we need them to actually succeed? I think not. I'd like to talk about off-and-prong, too, because here's the ultimate problem here. We went through great lengths to show the legal cause and effect of the vaccination, and what we found is we have a young man who has multiple levels of low antibodies to many serotypes, but he doesn't get sick. That directly contradicts the government's theory that low levels of antibodies is what caused his sickness. He has never developed pneumonia, other than for what you had said. There's multiple case law that sort of discusses this dichotomy between how we view experts and the underlying medical evidence. Now, the burden of proof under both Andro and Capizano said that can be sufficient, even without conclusive medical literature, epidemiological studies, or acceptance in the best messenger for it. But we had epidemiological studies. We had conclusive medical literature. Andro said, credibility determinations are not to evaluate whether an expert witnesses medical theory is supported by the weight of epidemiological evidence. Perhaps it was a tactical error on my part to bring in someone who was not board certified in immunology, and I acknowledge that. But this expert did have experience in treating pediatric pneumococcal patients. He was qualified by the special master to discuss immunological concepts. The government has seized on the fact that he's not a board certified immunologist, and what they want you to do is sort of set aside the underlying theories and literature that he presents it. Otherwise, as I said, the appeals here are futile. It just becomes a subjective belief on which expert sounds better or is more credible. So your argument, what's needed, we needn't go any farther, and I don't think the government did, than more likely than not. More likely than not, there was causation, and their position is more likely than not, there was not. But at what stage, and setting aside the question that is extremely difficult as to how deeply this court is authorized to weigh the facts, is your position that there should be another review on the more likely than not basis? An issue that I think we may very well not be authorized to decide on this appeal. I certainly understand the concern, but I would say let's look at the Campbell case. The Campbell case said that it was error as a matter of logic to find the medical literature weighs against causation if the articles reasonably stand for the proposition that the vaccine can cause the particular injury. And that's part of what I'm arguing today, is that it is an error as a matter of logic to take 23 mice and human studies with funding from the National Institute of Health, with proof that a vaccine company is using the theory, and then say that it cannot stand for the proposition that the MMR vaccine caused suppression of the T-cells which led to the pneumonia. I mean, I certainly am not asking you to try to re-weigh everything, but I am saying as a matter of logic and as a matter of what the standards of causation are, it is error. Andrew said it is an error to apply a standard of scientific certainty to medical literature and epidemiological evidence. And that's where I go back to that company that was developing a vaccine based on the very premise that we were arguing today in often one. He wanted the vaccine to succeed. That boosts it to a level of scientific certainty. And I certainly think that trying to extrapolate mice studies to humans is now going well beyond. Just for a moment, think about the implications it would have on the vaccine program. Now every petitioner would have to bring in a biologist to take animal studies and extrapolate them to humans. I would have to figure out a way. How do I do it? Because in the overwhelming majority of cases, we don't have human studies. It just doesn't happen. But the overwhelming majority of cases are table injuries. And the real problem is when these lines were drawn, how do we penetrate the fact that there was not the statutory presumption? It is not a table injury. I don't know, though, that the standards become heightened, whether it's a table injury or an off table injury. I'm really confused by what you say, standards being heightened. Your evidence was presented. You think it provided a plausible case. Are you saying once you provide a plausible case, the government isn't allowed to rebut that at all? I mean, what happened is you presented a bunch of studies that showed what they showed. The government came in with its evidence and said it shows something else. And under the regular standard of proof, the special master says, I make my factual findings based upon the government's evidence. That's not a heightened standard. That's just disagreeing with your evidence. I mean, there are instances in various aspects of the law where if a plaintiff or a has to overcome that response by a higher standard of evidence. But that's not the case here, right? It is both sides present their factual case and the special master makes a factual conclusion. Well, I don't think the burden ever shifted in this case. I mean, the burden is for you to provide a factual basis for this theory and you presented evidence that said, here's our basis. The government presented rebuttal evidence that said, no, that factual theory is incorrect. I would respectfully disagree that they provided any evidence. They put their expert on the stand. But that's evidence, isn't it? Unless you got the guy excluded, then it's evidence. He gets up there and testifies, this is what I know based upon my experience, my review of the literature, my review of your evidence, and here are my conclusions. Well, I believe that it was error to rule against us because I believe that the medical articles reasonably stand for the proposition that the vaccine caused the injury. I don't think any person looking at the conclusions of these articles would come away with any other conclusion. How can lay persons actually read these articles and come away with any conclusion when we're not experienced or have any kind of knowledge in this specific type of immunology? That's what expert witnesses are for, is to explain this evidence to us. It is complex immunology to a certain extent, but the conclusions are fairly straightforward in the articles. I highlight- If they're fairly straightforward, then you would assume that the government's board-certified immunologist who has expertise in this area would come to the same conclusion as you, but he did not. He's an expert for the government. He's there to attack our conclusions. And again, if he wasn't credible or reliable or had no expertise to provide an opinion, you should have moved to have him excluded. Absent that, the fact that he's an expert for the government doesn't detract from his overall weight of his testimony. I have your argument. I mean, I don't think we need to debate this point anymore. No, we will. We will give it careful thought. Thank you both. The case is taken under submission. Appreciate it.